[No. 35133. *En Banc.* October 27, 1960.]

H. L. SOMMERFELDT, *Appellant*, v. UNION PAINTING CO., INC., *Respondent*.[1]

*Rummens, Griffin, Short & Cressman* and *John H. Faltys*, for appellant.

*Jerry T. Haggarty*, for respondent.

FINLEY, J.—Appellant commenced this action to recover damages for the breach of an alleged written contract under

[1]Reported in 356 P. (2d) 601.

which he was to provide respondent, an Alaska corporation, with painting-quantity estimates to be used by respondent in carrying on its business as a painting subcontractor. Suit was instituted by the publication of summons and by the garnishment of certain funds of the respondent, located within this state. Respondent appeared specially and moved to quash the summons and garnishment. The trial court denied these motions. Respondent, reserving its special appearance, then filed an answer to the complaint, admitting execution of the document relied upon by appellant, but denying any obligation thereunder. Respondent's denial of liability was not based upon a claim that no services had been rendered by appellant. Rather, it was based upon a contention that the written contract, relied upon by appellant, had not become binding at the time of appellant's purported performance.

The document in question was executed on November 2, 1955. At that time, one Michael F. Goggans was employed by respondent as its painting-quantity estimator. Respondent's claim was (a) that James E. Norene, its president, who had negotiated the contract with appellant, told appellant that the company was dissatisfied with Goggans, and stated that Goggans would be discharged when he had completed certain estimates on which he was then working, and (b) that, when the written contract was executed, it was understood and agreed by the parties that it was not to become binding until such time as Goggans was discharged from his employment with respondent. Over appellant's strenuous objections, the trial court allowed Mr. Norene to testify to that effect, and, also, to show that, at the time of appellant's alleged performance, Goggans was still employed by respondent. Based upon this evidence, the trial court found that appellant's alleged performance had been rendered purely as an accommodation to the respondent, and dismissed appellant's action.

▮ The primary question raised by appellant is whether the trial court's admission of the testimony of Norene violated the so-called parol evidence rule. Before passing on that question, however, we must consider the preliminary

jurisdictional issue raised by respondent's motion to quash summons by publication. Respondent urges that the summons published by appellant fails to comply with that part of RCW 4.28.110 relating to manner of publication and form of summons, which provides that

" . . . said summons for publication shall also contain a brief statement of the object of the action."

The crucial language appearing in the summons published by appellant read as follows:

"The object of the above entitled action is to recover damages and attorney's fees for breach of contract."

Respondent's position is that the summons should have stated, additionally, that this was an action or proceeding *in rem* against funds belonging to respondent, in the state of Washington, and garnished by appellant. Respondent relies solely upon the dissenting opinion in *Stubbs v. Continental Tbr. Co.* (1908), 49 Wash. 431, 95 Pac. 1011, wherein it was said:

" . . . The object of the action in *Rossman v. Stubbs* was to obtain a judgment for money and also to enforce such judgment against certain attached real estate. There is no intimation in the summons [by publication] that the action is for anything more than to recover a personal judgment of $378. Upon the face of the summons that action was *in personam*, upon which no valid judgment could be entered. *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565; *Cosh-Murray Co. v. Tuttich*, 10 Wash. 449, 38 Pac. 1134. In order to be effective as a notice the published summons should have stated the object which would have shown jurisdiction in the court. . . ."

We cannot accept this view. What the author of this dissent overlooked is that the plaintiff's seizure of the defendant's property imparts notice that the plaintiff, in seeking to satisfy his personal claim against the defendant, is proceeding against the attached property. *Pennoyer v. Neff* (1877), *supra*, merely held that a judgment obtained on the basis of substituted service is not enforcible against the general assets of the defendant. In its opinion the United States Supreme Court made the following pertinent observation:

"Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. *The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale.*" (Italics ours.)

We hold, therefore, that the summons published by appellant was sufficient, notwithstanding its failure to include notice that appellant was proceeding against garnished funds of the respondent.

■ We turn now to appellant's argument that the trial court's admission of the testimony of the respondent's president, Norene, violated the parol evidence rule. As this court said in *Mapes v. Santa Cruz Fruit Packing Corp.* (1946), 26 Wn. (2d) 145, 173 P. (2d) 182,

"No citation of authorities is necessary to justify the well-established rule that parol evidence is not admissible to vary the terms of a written instrument. . . ."

On the other hand, we have also recognized, as stated in 1 Restatement, Contracts, 340, § 241, that, where parties to a written contract

". . . agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

See *Mapes v. Santa Cruz Fruit Packing Corp., supra*; accord: *Thomesen v. Hales* (1958), 52 Wn. (2d) 741, 328 P. (2d) 697; *Nelson Equipment Co. v. Goodman* (1953), 42 Wn. (2d) 284, 254 P. (2d) 727.

In the *Goodman* case we made the following statement respecting these two principles:

"There is a fine line of distinction (not always apparent) between the well-established rule that parol evidence is not admissible to vary the terms of a written instrument, and the exception which permits parol evidence to show that

the instrument never became a binding obligation because of the nonperformance of a condition precedent. . . .

"The difficulty is not with the rule. It is the application of the rule to the varying facts of each case which has caused the apparent inconsistencies in the decided cases. We have, however, evolved a test which is helpful in determining on which side of the line parol testimony falls. . . ."

The court then continued by quoting the following passage from *Mapes v. Santa Cruz Fruit Packing Corporation, supra*:

" 'In the final analysis, the question always resolves itself down to this: Does the parol testimony actually vary or change the terms of a written contract? If it does, it is not admissible. However, if, contemporaneously with the execution of a writing, the parties entered into a distinct, collateral contract, which had not been reduced to writing, such contract may be proved by parol testimony *so long as such evidence is not inconsistent with, and does not contradict, the writing.*' (Italics ours.)"[2]

---

[2]This formulization of the parol evidence rule has been the subject of criticism. Professor Warren L. Shattuck, in Contracts in Washington, 1937-1957: Part II, 34 Wash. L. Rev. 345, 376, presents his views as follows:

". . . If there is to be an interpretation rule restricting the inquiry to the writing, it must rest on an assumption about the clarity of written language which experience shows to be ill-founded. Adoption of the language by both parties adds nothing to its reliability; if the language has been integrated in a writing the agreement is entitled to the protection of the parol evidence rule, but what is to be protected cannot be known until the writing has been interpreted. The cart is very much in front of the horse if the parol evidence rule is employed to exclude evidence proffered in aid of interpretation. The argument that evidence offered for this purpose should be rejected because it may 'vary' or 'contradict' the 'plain meaning' of the writing is without substance; interpretation may have precisely those effects, and properly so. A writing, read in light of the circumstances under which it was executed, may well prove to have a meaning it would not have if read in a vacuum. This does not mean the surrounding circumstances will usually or even often require a non-literal interpretation of the writing; they may in fact bolster such an interpretation. It does mean that as a matter of technic, the door should not be closed on the occasional litigant as to whom those circumstances point to a non-literal meaning." (Footnote references omitted.)

Professor Shattuck points to two lines of Washington cases respecting the admission of parol evidence and finds them to be irreconcilable.

▇ Thus, in the instant case the question is a simple one; namely, whether the written contract is clearly inconsistent with a contemporaneous oral agreement that the written contract was not to become binding until such time as respondent had dispensed with the services of Michael Goggans as its painting-quantity estimator. Or, stated another way, the question is whether the written agreement, clearly on its face, indicates that the parties intended it to be effective and binding as of the date the parties signed it. Appellant argues that we should resolve the question affirmatively and, of course, in his favor. We notice that there is absolutely no reference in the writing to a date when the employment was intended to commence. Therefore, to conclude from the writing alone that it is clear as to the beginning date of employment is to infer from the absence of a specified date (*i.e.*, to interpret the contract) that the parties were immediately bound. One would have to interpret the contract first and then conclude that it is so clear and free from ambiguity that parol evidence of a condition precedent would contradict its terms. We are convinced that the written document is unclear and ambiguous as to the date it was to become effective and binding on the parties. To make the inference appellant desires is simply to resolve the ambiguity one way rather than the other, and by a process of interpretation.

In support of his argument appellant points to and emphasizes an interpretation of paragraph five of the agreement. That paragraph reads as follows:

"Second party [respondent] *hereby* employs first party [appellant] as above set forth on all his quantity work for a period of 5 years and agrees to pay first party therefor as herein set forth." (Italics ours.)

Essentially, appellant is relying upon his interpretation of the word "*hereby*." Apparently, he deems this word to mean or to be the equivalent of "now—as of this date." We

---

Since in our view the instant case must be decided the same way under the restrictive, criticized approach as it would be under the more liberal treatment of parol evidence, we do not believe this to be a proper case in which critically to review and evaluate our seemingly conflicting cases.

do not agree. Words appearing in a contract are to be given their ordinary meaning unless circumstances show that a different meaning was intended and should be applied. *Mead v. Anton* (1949), 33 Wn. (2d) 741, 207 P. (2d) 227, 10 A. L. R. (2d) 588. In Webster's New International Dictionary (2d ed.) 1167, the word "hereby" is defined as: "By means of this." No circumstances in the instant case indicate that the parties intended that the word "hereby," as used in the written instrument, should mean anything other than "by means of this instrument."

We are convinced that the trial judge committed no error in admitting the testimony of Mr. Norene. Once this testimony was admitted, the trial judge was entitled to believe it and to disbelieve evidence introduced by appellant to the contrary. It follows that appellant's assignments of error are not well taken. The judgment of the trial court should be affirmed.

It is so ordered.

WEAVER, C. J., ROSELLINI, OTT, and HUNTER, JJ., concur.

HILL, J. (dissenting)—I dissent. We have here an agreement in writing, dated November 2, 1955, which states:

"Second party hereby employs first party as above set forth on all his quantity work for a period of 5 years and agrees to pay first party therefor as herein set forth."

The testimony of James E. Norene: that the period of five years was to begin on some undetermined date in the future, which only he could make certain (*i.e.*, when he dispensed with the services of a Mr. Goggans), was permitted to vary the clear terms of the written agreement and to make uncertain what had been clear. In permitting the variation of the terms of the written agreement by Mr. Norene's testimony, the trial court erred. I would reverse.

MALLERY, DONWORTH, and FOSTER, JJ., concur with HILL, J.